# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

| | |
|---|---|
| MARK SMITH, on behalf of himself and all others similarly situated, | Civil Action No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **JURY TRIAL DEMANDED** |
| THE J. M. SMUCKER COMPANY and THE FOLGER COFFEE COMPANY, | |
| Defendants. | |

COME NOW, Plaintiff Mark Smith ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action complaint against Defendants The J. M. Smucker Company and The Folger Coffee Company (collectively, "Defendants"), based on Defendants' false and deceptive labeling and advertising of their Folgers ground coffee products (hereinafter collectively referred to as the "Products").[1] Plaintiff makes the following allegations upon personal knowledge as to his own acts and experiences, and upon information and belief and the investigation of counsel.

## INTRODUCTION

1.     This case involves a straightforward and systematic course of false, misleading, and unlawful conduct: Defendants have grossly misrepresented the number of cups of coffee that the Products can make.

2.     Throughout the statute of limitations period, Defendants have sold the Products to consumers based on the representation that they contain enough ground coffee to make up to a specific number of servings (e.g., "240 6 fl oz cups"). However, by following Defendants' own definitions and instructions, the Products do not contain enough ground coffee to make the number of servings represented or even close to it.

3.     Indeed, it is a classic and unlawful bait-and-switch scheme that causes unsuspecting consumers to spend more money for less than the advertised amount of coffee they believe they are purchasing.

4.     Plaintiff and other consumers purchased the Products because they reasonably believed – based on Defendants' representations – that these Products contained enough coffee to make the specified number of servings. Had Plaintiff and other consumers known the truth (i.e.,

---

[1] "Products" are further defined *infra* in Paragraphs 14-15.

that the Products do not contain enough coffee to make the specified number of servings), they would have paid less for them, or would not have purchased them at all. As a result, Plaintiff and other consumers have been deceived and have suffered economic injury.

5.       Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased Defendants' falsely and deceptively labeled Products during the statute of limitations period.

## JURISDICTION AND VENUE

6.       This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, there are thousands of proposed Class[2] members, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and Defendants are citizens of a state different from at least some members of the proposed Classes, including Plaintiff.

7.       This Court has personal jurisdiction over Defendants because Defendants have sufficient minimum contacts in Missouri, or otherwise intentionally avail themselves of the markets within Missouri, through their sale of the Products in Missouri and to Missouri consumers.

8.       Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff Mark Smith's claims occurred in this District. Plaintiff resides in this District and purchased the Products in this District.

## PARTIES

9.       Plaintiff Mark Smith is a citizen of the United States and the State of Missouri and he currently resides in Cass County, Missouri. On or around January 2021, Plaintiff Smith purchased the Products. Plaintiff Smith purchased the Folgers Classic Coffee Roast, 30.5 oz.

---

[2] The "Classes" is defined *infra* in Paragraph 41.

Product, the Folgers 100% Colombian Coffee, 24.2 oz. Product, the Folgers Country Roast Coffee, 31.1 oz. Product, and the Folgers Gourmet Supreme Coffee, 27.8 oz. Product. Plaintiff Mark Smith purchased the Folgers Classic Coffee Roast at a Sam's Club in Raymore, Missouri, and purchased the other roasts from a HyVee in Belton, Missouri and Walmart in Raymore, Missouri. Plaintiff Mark Smith purchased the foregoing Products all for his own personal benefit. In purchasing the Products, Plaintiff Mark Smith saw and relied on Defendants' representations made on the packaging. For example, Plaintiff Mark Smith reasonably believed that the Folgers Classic Roast 30.5 oz. Product contained enough ground coffee to make 240 cups or servings because he saw the representation "MAKES UP TO 240 6 FL OZ CUPS" prominently printed on the front of the canister. Plaintiff Mark Smith's reasonable belief that the Products he purchased could make the represented number of servings was an important factor in his decision to purchase the Products. Plaintiff Mark Smith would have paid significantly less for the Products had he known that the Products did not contain enough ground coffee to make the represented number of cups of coffee. Therefore, Plaintiff Mark Smith suffered injury in fact and lost money as a result of Defendants' misleading, false, unfair, and deceptive practices, as described herein.

10. Despite being misled by Defendants with respect to the Folgers ground coffee products they purchased, Plaintiff lacks personal knowledge as to Defendants' specific business practices. Consequently, there is still doubt in his mind as to the possibility that some of the Products could contain enough coffee to make the advertised number of servings. For example, because there are many Folgers Products involved in Defendants' deceit, and due to the likelihood that Defendants may yet develop and market additional coffee products that misrepresent the serving yield, Plaintiff may again purchase a falsely-advertised ground coffee products from Defendants under the mistaken impression that the represented number of servings is accurate.

Moreover, Class members will continue to purchase the Products, reasonably but incorrectly believing that they contain enough coffee to make the advertised number of servings.

11.     Plaintiff is also susceptible to reoccurring harm in that he desires to continue to purchase the Products but cannot be certain Defendants have corrected their deceptive and false advertising scheme. Indeed, Plaintiff regularly shops at stores where the Products are sold, and he would like to continue purchasing the Products because he likes the taste. However, he currently cannot trust that Defendants will label and/or advertise the Products he purchased in the past truthfully and in compliance with applicable law.

12.     The J. M. Smucker Company is a corporation organized and existing under the laws of the state of Ohio, with its headquarters and principal place of business at One Strawberry Lane, Orrville, OH 44667. The J. M. Smucker Company is one of the world's biggest packaged goods companies and it owns the Folgers brand.

13.     The Folger Coffee Company is a corporation organized and existing under the laws of the state of Ohio, with its headquarters and principal place of business at One Strawberry Lane, Orrville, OH 44667. Folgers has a rich history dating back to 1850 and is arguably the most well-known coffee maker in the United States. The coffee giant excels in offering a wide range of products to customers, including varying flavors, roasts and strength of coffee. Beginning in 1850 in San Francisco, Folgers is now a household name recognized and sold around the world. Since the early 1990s, it has been the largest-selling ground coffee provider in the United States. In the 1980s, Folgers' slogan "The best part of waking up is Folgers in your cup!" and the well-associated jingle became recognizable in households across the country, along with the Folgers name. Folgers generates millions of dollars in sales each year, a significant portion of which is derived from sales of the Products in California. In 2008, Folgers was acquired by The J. M. Smucker Company from

Procter & Gamble for a reported $3 billion.

## FACTUAL ALLEGATIONS

**A.     The Folgers Ground Coffee Products At Issue**

14.     The Products at issue in this case consist of all varieties (e.g., different types of roasts) and sizes (e.g., 20 oz., 30.5 oz., etc.) of Folgers ground coffee canisters.

15.     These Products include but are not limited to the following varieties of Folgers ground coffee canisters: Classic Roast, Classic Roast Decaf, ½ Caff, CoffeeHouse Blend, Country Roast, Simply Smooth, Simply Smooth Decaf, 100% Colombian, Black Silk, Black Silk Decaf, Brazilian Blend, Breakfast Blend, French Roast, Gourmet Supreme, House Blend, and Special Roast.

16.     The Products are sold across the United States, including in Missouri, through third party retailers including grocery chains and large retail outlets.

**B.     Defendants Grossly Overstate The Number Of Servings The Products Can Make**

17.     Defendants represent on the packaging of each of the Products that they contain enough ground coffee to make up to a specified number of servings. For example, Defendants prominently state on the front canister of the 30.5 oz. canister of Folgers Classic Roast Coffee: "MAKES UP TO 240 6 FL OZ CUPS."

18.     Representative images of the front of the canisters of some of the Products are depicted below:







19. Defendants place a materially identical representation on the front label of all the Products, although the number of represented servings of course varies based on the size of the Product.

20. On the back of all the Products, Defendants instruct consumers that they should use one tablespoon of ground coffee to make one serving (one 6 fl oz cup) of coffee.[3]

21. One tablespoon of ground coffee weighs approximately 5 grams.

22. Based on these standard measurements, it is evident that Defendants grossly overstate the number of servings the Products can make.

23. By way of example, Defendants represent on the 30.5 oz. canister of the Folgers Classic Roast that it "MAKES UP TO 240 6 FL OZ CUPS."

24. As set forth above, one tablespoon of ground coffee is needed to make 1 serving. Therefore, 240 tablespoons of ground coffee are needed to make 240 servings.

25. As set forth above, one tablespoon of ground coffee = approximately 5 grams. Therefore, 1200 grams of ground coffee is needed to make 240 servings [240 tablespoons x 5 grams].

26. However, the 30.5 oz. canister has a net weight of 865 grams. Therefore, it contains only 72% of the amount of ground coffee required to make up to 240 cups of coffee [865 / 1200 x 100%]. This is equivalent to approximately 173 cups of coffee.

27. The same shortfall (i.e., only 173 cups of coffee) is calculated by dividing the total grams of coffee in the 30.5 oz. cannister by the number of grams required to make a single serving [865 grams / 5 grams].

---

[3] Hereinafter, the term "cup" is synonymous, and used interchangeably with, the term "serving" and is equivalent to 6 fluid ounces, based on Defendants' representations.

28.     In sum, the 30.5 oz. canister only contains enough coffee to make 173 cups, which is equivalent to 72% of the amount of ground coffee that is required to make the 240 cups of coffee:

- 865 grams / 1200 grams = 72%

- 173 cups / 240 cups = 72%

29.     Thus, it is impossible for the Product to contain enough ground coffee to make anywhere close to "240 6 fl oz cups" of coffee, as promised by Defendants. Defendants' representation that the 30.5 oz. canister "MAKES UP TO 240 6 FL OZ CUPS" is therefore false, deceptive, and misleading.

30.     The same calculations apply equally to all of the other Products. According to their net weight, as well as the weight per tablespoon of ground coffee, they are unable to make anywhere close to the represented number of cups. These calculations are set forth in the following chart:

| Product Name | Net Weight | Number of "Up To" Servings Promised | Approximate Number of Servings Received | Approximate Percentage of Servings Received |
|---|---|---|---|---|
| Classic Roast | 11.3 oz. | 90 | 64 | 71.1% |
| Classic Roast | 22.6 oz. | 180 | 128 | 71.1% |
| Classic Roast | 30.5 oz. | 240 | 173 | 72.0% |
| Classic Roast | 38.4 oz. | 305 | 216 | 70.8% |
| Classic Roast | 48 oz. | 380 | 272 | 71.6% |
| Classic Roast | 51 oz. | 400 | 288 | 72% |
| Classic Decaf | 11.3 oz. | 90 | 64 | 71.1% |
| Classic Decaf | 22.6 oz. | 180 | 128 | 71.1% |
| Classic Decaf | 30.5 oz. | 240 | 173 | 72.0% |
| Classic Decaf | 33.9 oz. | 270 | 192.2 | 71.2% |
| 1/2 Caff | 10.8 oz. | 90 | 61.2 | 68% |
| 1/2 Caff | 25.4 oz. | 210 | 144 | 68.6% |
| CoffeeHouse Blend | 10.8 oz. | 90 | 61.2 | 68% |
| CoffeeHouse Blend | 25.4 oz. | 210 | 144 | 68.6% |

| | | | | |
|---|---|---|---|---|
| Country Roast | 25.1 oz. | 240 | 142.2 | 59.3% |
| Country Roast | 31.1 oz. | 240 | 176.4 | 73.5% |
| Simply Smooth | 11.5 oz. | 90 | 65.2 | 72.4% |
| Simply Smooth | 23 oz. | 180 | 130.4 | 72.4% |
| Simply Smooth | 31.1 oz. | 240 | 176.4 | 73.5% |
| Simply Smooth | 34.5 oz. | 270 | 195.6 | 72.4% |
| Simply Smooth Decaf | 11.5 oz. | 90 | 65.2 | 72.4% |
| Simply Smooth Decaf | 23 oz. | 180 | 130.4 | 72.4% |
| 100% Colombian | 10.3 oz. | 90 | 58.4 | 64.9% |
| 100% Colombian | 24.2 oz. | 210 | 137.2 | 65.3% |
| Black Silk | 10.3 oz. | 90 | 58.4 | 64.9% |
| Black Silk | 24.2 oz. | 210 | 137.2 | 65.3% |
| Black Silk Decaf | 10.3 oz. | 90 | 58.4 | 64.9% |
| Black Silk Decaf | 20.6 oz. | 180 | 116.8 | 64.9% |
| Brazilian Blend | 10.3 oz. | 90 | 58.4 | 64.9% |
| Brazilian Blend | 24.2 oz. | 210 | 137.2 | 65.3% |
| Breakfast Blend | 10.8 oz. | 90 | 61.2 | 68% |
| Breakfast Blend | 25.4 oz. | 210 | 144 | 68.6% |
| Breakfast Blend | 38.5 oz. | 315 | 218 | 69.2% |
| French Roast | 10.3 oz. | 90 | 58.4 | 64.9% |
| French Roast | 24.2 oz. | 210 | 137.2 | 65.3% |
| Gourmet Supreme | 10.3 oz. | 90 | 58.4 | 64.9% |
| Gourmet Supreme | 24.2 oz. | 210 | 137.2 | 65.3% |
| Gourmet Supreme | 27.8oz | 240 | 157.8 | 65.7% |
| House Blend | 10.3 oz. | 90 | 58.4 | 64.9% |
| House Blend | 24.2 oz. | 210 | 137.2 | 65.3% |
| Special Roast | 10.3 oz. | 90 | 58.4 | 64.9% |
| Special Roast | 24.2 oz. | 210 | 137.2 | 65.3% |

31.    There are 42 varieties of the Products listed in the chart above. Each and every one of them contains substantially less ground coffee than is required to make the recommended number of "up to" servings promised on the packaging. On average, these Products contain enough ground coffee to make only 68.29% of the number of servings promised on the packaging, thus

revealing a systematic course of unlawful conduct by Defendants to deceive and shortchange consumers.

**C.      The False And Deceptive Serving Amount Representations Harm Consumers**

32.      Plaintiff and other consumers purchased the Products relying on Defendants' serving amount representations on the Products' packaging.

33.      Plaintiff and other consumers reasonably expect that, if they follow the serving instructions, the Products will produce the number of servings/cups of coffee as represented on the Products' packaging.

34.      Plaintiff and consumers' reasonable belief that the Products are able to make up to the represented number of cups of coffee was a significant factor in each of their decisions to purchase the Products.

35.      Plaintiff and Class members did not know, and had no reason to know, that the Products' labeling vastly overstates the number of cups of coffee they are able to make. At the time of purchase, a reasonable consumer cannot measure or calculate how many servings the Products can make. Nor are reasonable consumers expected to keep track of the precise number of cups of coffee they make over a period of time.

36.      As the entity responsible for the development, manufacturing, packaging, advertising, distribution and sale of the Products, Defendants knew or should have known that each of the Products falsely and deceptively overstates the number of servings of coffee that can be made.

37.      Defendants also knew or should have known that Plaintiff and other consumers, in purchasing the Products, would rely on Defendants' serving size representations. Nonetheless, Defendants deceptively advertise the Products in order to deceive consumers into believing they are getting considerably more coffee than they are paying for.

13

38. Consumers are willing to pay more for the Products based on the belief that the Products contain enough ground coffee to make up to the represented number of servings. Plaintiff and other consumers would have paid significantly less for the Products, or would not have purchased them at all, had they known that they were getting fewer servings of coffee than what they were promised.

39. By analogy, if a consumer purchased a six-pack of soda, but only received four cans of soda, the consumer would only be receiving 66.67% of what she paid for. The situation here is no different in terms of the harm to the consumer. The only difference is that, due to the nature of the Products, Defendants are able to conceal the gross shortfall of coffee because reasonable consumers do not keep track of the number of cups of coffee they make over a period of time.

40. Therefore, Plaintiff and other consumers purchasing the Products have suffered injury in fact and lost money as a result of Defendants' false and deceptive practices, as described herein.

## CLASS ACTION ALLEGATIONS

41. Plaintiff, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and (b)(3), bring this action on behalf of the following Classes:

- The "Nationwide Class": All persons who purchased any of the Products in the United States for personal, family, or household purposes, within the applicable statute-of-limitations period.

- The "Missouri Class": All persons who purchased any of the Products in Missouri for personal, family, or household purposes, within the applicable statute-of-limitations period.

42. Excluded from the Classes are Defendants, their parents, subsidiaries, affiliates,

officers, and directors; all persons who make a timely election to be excluded from the Classes; the judge to whom this case is assigned and any immediate family members thereof; and any persons who assert claims for personal injury.

43.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes after having had an opportunity to conduct discovery.

44.     <u>Numerosity:</u> The proposed Classes are so numerous that joinder of all members would be impractical. The Products are sold throughout Missouri and the United States generally by third-party retailers. The number of individuals who purchased the Products during the relevant time period is at least in the tens of thousands. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable.

45.     <u>Common Questions Predominate:</u> There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

- Whether Defendants misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Products;

- Whether Defendants' use of false or deceptive packaging and advertising constituted false or deceptive advertising;

- Whether Defendants engaged in unfair, unlawful and/or fraudulent business practices;

- Whether Defendants' conduct violated the numerous state consumer protection statutes alleged herein;

- Whether Defendants' unlawful conduct, as alleged herein, was intentional and knowing;

- Whether Plaintiff and the Classes are entitled to damages and/or restitution, and in what amount;

- Whether Defendants are likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

- Whether Plaintiff and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

46.     Defendants have engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff and Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendants' deceptive packaging and advertising of the Products. Each instance of harm suffered by Plaintiff and Class members has directly resulted from a single course of illegal conduct. Each Class member has been exposed to the same deceptive practice, as each of the Products: (a) bear the materially same serving amount representations, and (b) do not contain enough ground coffee to make anywhere close to the represented serving amount. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

47.     <u>Superiority</u>: Because of the relatively small amount of damages at issue for each individual Class member, no Class member could afford to seek legal redress on an individual

basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

48.     Typicality: The representative Plaintiff's claims are typical of those of the other Class members, as Plaintiff and all Class members are similarly affected by Defendants' uniform unlawful conduct as alleged herein.

49.     Adequacy: Plaintiff will fairly and adequately protect the interests of the proposed Class as his interests do not conflict with the interests of the members of the proposed Classes he seeks to represent, and he has retained counsel competent and experienced in class action litigation. The interests of the members of the Class will be fairly and adequately protected by the Plaintiff and counsel.

50.     **Declaratory and Injunctive Relief.** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Classes as a whole.

## CAUSES OF ACTION

### COUNT I
**Violation of Missouri's Merchandising Practices Act ("MMPA")**
**(*on behalf of the Missouri Class*)**

51.     Plaintiff re-alleges and incorporates Paragraphs 1-50 as if fully set forth herein.

52.     Plaintiff brings this claim individually and on behalf of the Missouri Class.

53.     The MMPA provides that it is unlawful to "act, use or employ . . . deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise

in trade or commerce . . . ." Mo. Rev. Stat. § 407.020.1.

54. The Products are "merchandise" pursuant to Mo. Rev. Stat. § 407.010(4), and Defendants are selling the Products in trade or commerce.

55. As demonstrated above, Defendants' packaging and advertising constitutes the act, use or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices in connection with the sale or advertisement of the Products in that Defendant grossly overrepresents the number of servings that can be made with each Product.

56. Defendants' misrepresentations regarding the Products are material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions), because they relate to the composition and use of the Products.

57. At all relevant times, Defendants knew or should have known that each of the Products falsely and deceptively overstates the number of servings of coffee that can be made, and that Plaintiff and other members of the Missouri Class would reasonably and justifiably rely on the representations about the Products in purchasing them.

58. Plaintiff and members of the Missouri Class purchased the Products for personal, family, or household purposes.

59. Plaintiff and other members of the Missouri Class reasonably and justifiably relied on Defendants' misleading and fraudulent packaging of the Products when purchasing them.

60. Plaintiff and other members of the Missouri Class have suffered an ascertainable loss caused by Defendants because they would not have purchased the Products or would have paid significantly less for the Products, had they known that Defendants' conduct was misleading and fraudulent.

61.     Defendants' conduct was intentional, wrongful, and malicious and entitles Plaintiff and proposed Missouri Class to the recovery of punitive damages as authorized by statute. Mo. Rev. Stat. § 407.025.1.54.

62.     In addition, Defendants' conduct has caused Plaintiff and members of the Missouri Class irreparable injury. As described herein, Defendants have engaged in unlawful and misleading conduct on a routine and automated basis, harming Class members in a uniform manner. Unless restrained and enjoined, Defendants will continue such conduct. Therefore, Plaintiff requests injunctive relief, and such other equitable relief as the Court deems just and proper.

## COUNT II
### Breach of Express Warranty
### (*on behalf of the Missouri Class*)

63.     Plaintiff re-alleges and incorporates Paragraphs 1-50 as if fully set forth herein.

64.     Plaintiff brings this claim individually and on behalf of the Missouri Class.

65.     Missouri's express warranty statute provide that: "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Mo. Stat. § 400.2-313(1).

66.     Plaintiff and the members of the Missouri Class formed a contract with Defendants at the time they purchased the Product. As part of that contract, Defendants have expressly warranted on the Products' packaging that they can make up to a specific number of servings. For example, Defendants expressly state on the packaging of the 30.5 oz. canister that it "MAKES UP

TO 240 6 FL OZ CUPS." However, as alleged herein, this express representation is patently false, as the 30.5 oz. canister can only make up to 173 cups of coffee, or only 72% of the amount of ground coffee promised by Defendants. All of the other varieties of the Products contain materially identical express representations that are likewise false.

67. These representations about the Products: (a) are affirmations of fact or promises made by Defendants to consumers that the Products contain enough ground coffee to make a specific number of servings; (b) became part of the basis of the bargain to purchase the Products when Plaintiff and other consumers relied on the representation; and (c) created an express warranty that the Products would conform to the affirmations of fact or promises. In the alternative, the representations about the Products are descriptions of goods which were made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the product description.

68. Defendants made the serving representations to induce Plaintiff and members of the Missouri Class to purchase the Products, and Plaintiff and members of the Missouri Class relied on the representations in purchasing the Products.

69. Each such representation constitutes an express warranty and became part of the basis of the bargain between Plaintiff and members of the Missouri Class, on the one hand, and Defendants, on the other.

70. All conditions precedent to Defendants' liability under the above-referenced contract have been performed by Plaintiff and members of the Missouri Class.

71. Defendants breached the express warranties about the Products because, as alleged above, the Products are not able to make the number of servings that are represented on the Products' labeling.

72.     Plaintiff and members of Missouri Class reasonably and justifiably relied on the foregoing express warranties, believing that Products did in fact conform to the warranties.

73.     Plaintiff and members of Missouri Class paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiff and members Missouri Class had known of the true nature of the Products, they would not have purchased them or would have paid significantly less for them. Thus, as a result of Defendants' breaches of express warranty, Plaintiff and members of Missouri Class were damaged in the amount of the premium price they paid for the Product, in amounts to be proven at trial

74.     As a result of Defendants' breach of express warranties, Plaintiff and members of the Missouri Class suffered injury and deserve to recover all damages afforded under the law.

## COUNT III
### Breach of Implied Warranty of Merchantability
#### (*on behalf of the Missouri Class*)

75.     Plaintiff re-alleges and incorporates Paragraphs 1-50 as if fully set forth herein.

76.     Plaintiff brings this claim individually and on behalf of the Missouri Class.

77.     Missouri's implied warranty law provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Mo. Stat. § 400.2-314(1).

78.     Missouri's implied warranty law also states that "[g]oods to be merchantable must be at least such as . . . (f) conform to the promises or affirmations of fact made on the container or label if any." Mo. Stat. § 400.2-314(2)(f).

79.     Defendants are merchants with respect to the sale of the Products at issue here. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to Missouri consumers.

80.     By advertising the Products with their current packaging, Defendants made an implied promise that the Products contain enough ground coffee to make up to a specific number of servings. The Products have not "conformed to the promises…made on the container or label" because they do not contain enough ground coffee to make up to the specified number of servings. Plaintiff, as well as Missouri consumers, did not receive the goods as impliedly warranted by Defendants to be merchantable.

81.     Therefore, the Products are not merchantable under Missouri law and Defendants have breached their implied warranty of merchantability in regard to the Products.

82.     If Plaintiff and members of the Missouri Class, had known that the Products could not make as many servings of coffee as represented, they would not have been willing to pay the premium price associated with them. Therefore, as a direct and/or indirect result of Defendants' breach, Plaintiff and members of the Missouri Class, have suffered injury and deserve to recover all damages afforded under the law.

<u>COUNT IV</u>
**Common Law Fraud**
(**o***n behalf of the Classes*)

83.     Plaintiff re-alleges and incorporates Paragraphs 1-50 as if fully set forth herein.

84.     Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class. Alternatively, Plaintiff brings this claim individually and on behalf of the members of the proposed Missouri Class.

85.     Defendants marketed the Products in a manner indicating that they contain enough ground coffee to make up to a specific number of servings. However, the Products cannot make anywhere close to the represented number of servings. Therefore, Defendants have made misrepresentations about the Products.

86.     Defendants' misrepresentations regarding the Products are material to a reasonable consumer because they relate to the amount of product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

87.     At all relevant times when such misrepresentations were made, Defendants knew that the representations were misleading, or have acted recklessly in making the representations, without regard to the truth.

88.     Defendants intend that Plaintiff and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Defendants.

89.     Plaintiff and members of the Classes have reasonably and justifiably relied on Defendants' intentional misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased them at the prices at which they were offered.

90.     Therefore, as a direct and proximate result of Defendants' intentional misrepresentations, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## COUNT V
### Negligent Misrepresentation
#### (*on behalf of the Classes*)

91.     Plaintiff re-alleges and incorporates Paragraphs 1-50 as if fully set forth herein.

92.     Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class. Alternatively, Plaintiff brings this claim individually and on behalf of the members of the proposed Missouri Class.

93.     Defendants marketed the Products in a manner indicating that they contain enough ground coffee to make a specific number of servings. However, the Products cannot make anywhere close to the represented number of servings. Therefore, Defendants have made misrepresentations about the Products.

94.     Defendants' misrepresentations regarding the Products are material to a reasonable consumer because they relate to the amount of product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

95.     At all relevant times when such misrepresentations were made Defendants knew or had been negligent in not knowing that that the Products did not contain enough ground coffee to make the specified number of servings. Defendants had no reasonable grounds for believing their misrepresentations were not false and misleading.

96.     Defendants intend that Plaintiff and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Defendants.

97.     Plaintiff and members of the Classes have reasonably and justifiably relied on Defendants' negligent misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased them at the prices at which they were offered.

98.     Therefore, as a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

**Unjust Enrichment/Quasi-Contract**
(*on behalf of the Classes*)

99.     Plaintiff re-alleges and incorporates Paragraphs 1-50 as if fully set forth herein.

100.    Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class. Alternatively, Plaintiff brings this claim individually and on behalf of the members of the proposed Missouri Class.

101.    As alleged herein, Defendants have intentionally and recklessly made misleading representations to Plaintiff and members of the Classes to induce them to purchase the Products. Plaintiff and members of the Classes have reasonably relied on the misleading representations and have not received all of the benefits promised by Defendants. Plaintiff and members of the Classes therefore have been induced by Defendants' misleading and deceptive representations about the Products, and paid more money to Defendants for the Products than they otherwise would and/or should have paid.

102.    Plaintiff and members of the Classes have conferred a benefit upon Defendants as Defendants have retained monies paid to them by Plaintiff and members of the Classes.

103.    The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the Classes – i.e., Plaintiff and members of the Classes did not receive the full value of the benefit conferred upon Defendants.

104.    Therefore, it is inequitable and unjust for Defendants to retain the profit, benefit, or compensation conferred upon them without paying Plaintiff and the members of the Classes back for the difference of the full value of the benefits compared to the value actually received.

105.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a

constructive trust upon all profits, benefits, and other compensation obtained by Defendants from their deceptive, misleading, and unlawful conduct as alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the proposed Classes, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

A.     Certifying the Classes as requested herein, designating Plaintiff as the class representative and appointing the undersigned counsel as class counsel;

B.     Declaring that Defendants are financially responsible for notifying the Class members of the pendency of this suit;

C.     Ordering restitution and disgorgement of all profits and unjust enrichment Defendants obtained from Plaintiff and the Classes as a result of Defendants' unlawful, unfair and fraudulent business practices;

D.     Ordering payment of damages as permitted by law, including actual, compensatory, statutory, and punitive damages, to the full extent permitted by law;

E.     Ordering injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and ordering Defendants to engage in a corrective advertising campaign;

F.     Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

G.     Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

H.     Ordering such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury of all claims in this Complaint so triable.

DATED: November 23, 2021

By:  */s/ Tim E. Dollar*
    Tim E. Dollar

Tim E. Dollar, MO Bar No. 33123
**DOLLAR BURNS BECKER**
  **& HERSHEWE, L.C.**
1100 Main Street, Suite 2600
Kansas City, MO 64105
Telephone: (816) 876-2600
Facsimile: (816) 221-8763
Email:  timd@dollar-law.com